# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JASON KEEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 3:14-CV-1492 |
| ) | |
| CORIZON MEDICAL SERVICES, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is a complaint filed by Jason Keel, a *pro se* prisoner, pursuant to 42 U.S.C. § 1983. (DE 1.) For the reasons set forth below, the Court: (1) **GRANTS** the plaintiff leave to proceed against Dr. Michael Mitcheff in his individual capacity for monetary damages for denying him proper medical treatment for his hand; (2) **GRANTS** the plaintiff leave to proceed against Dr. Michael Mitcheff in his official capacity for injunctive relief related to his current need for medical treatment for his hand; (3) **DISMISSES** Dr. Noe Marandet, Kimberly Myers, Mrs. Frye, Mrs. Ivers, Shalana Seifert, Dr. Benjamin R. Loveridge, and Corizon Medical Services; (4) **DISMISSES** any and all other claims contained in the complaint; (5) **DIRECTS** the United States Marshals Service to effect service on Dr. Michael Mitcheff pursuant to 28 U.S.C. § 1915(d); and (6) **ORDERS** Dr. Michael Mitcheff to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE, only to the claims for which the

plaintiff has been granted leave to proceed in this screening order.

BACKGROUND

Jason Keel, a *pro se* prisoner, filed this action on May 2, 2014. (DE 1.) He alleges that medical staff at Miami Correctional Facility ("Miami") have denied him proper treatment for several debilitating medical conditions in violation of the Eighth Amendment.

DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. In determining whether the complaint states a claim, the court applies the same standard as when deciding a motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2

defendant is liable for the misconduct alleged." *Id.* at 603. The court must bear in mind, however, that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

According to the detailed complaint, Keel suffers from several chronic conditions, including degenerative disc disease, right shoulder pain, "electrical like pains" in his right arm and hand, neck pain, and inability to hold anything with his left hand. He claims that these impairments cause him difficulty carrying out daily functions, including brushing his teeth, tying his shoes, and washing himself in the shower. Upon his arrival at Miami in May 2012, he was examined by Dr. Noe Marandet. Dr. Marandet listened to his complaints and looked at an MRI report that Keel provided to him. After speaking with Keel Dr. Marandet determined that he would continue his current prescription of Neurontin for pain. He told Keel that he did not think Dr. Michael Mitcheff, the regional medical director for Corizon Medical Services ("Corizon"), would approve any additional medications.

In May 2013, after Keel put in requests for medical care complaining that he was in pain and having muscle spasms, he was seen again by Dr. Marandet. After speaking with Keel, Dr. Marandet prescribed a muscle relaxer, Soma, for a 7-day period. Dr. Mitcheff

approved this medication. Keel claims that the Soma helped significantly, but after the prescription ran out it was not renewed. Keel was seen again by Dr. Marandet in July 2013, and the doctor placed him on Vicodin for a 7-day period. He also referred him for physical therapy. At the end of the month, Dr. Marandet saw him again and ordered an x-ray of his left hand and upper spinal area. He placed him on Soma and Tramadol for 14 days for pain and muscle spasms. Dr. Mitcheff approved these medications.

On August 5, 2013, Keel was experiencing significant pain in his neck, shoulder, and face, loss of vision in his right eye, and problems with his balance. He was taken to the medical unit, and after examining him Dr. Marandet ordered that he be taken to an outside hospital for evaluation. He was treated at the emergency room of Howard Health Hospital. A CAT scan was performed but, in Keel's words, "[t]hey could not find the exact cause of my loss of vision." He was given a shot of morphine for pain. The doctor at Howard advised him that the pain was likely due to muscle spasms and tension in the tendons in his neck. That same day he was released and returned to Miami.

The following day he was still in pain and was taken to the medical unit. Dr. Marandet examined him and decided to place him in the medical isolation unit in the infirmary. Keel asked for the additional medications that had been recommended by the emergency room doctor, but Dr. Marandet responded that in his view Keel's

4

current medications were appropriate. Keel remained in the infirmary for 10 days. He asserts, without elaboration, that he "had to lie to the physician so that I could be released from the infirmary."

On August 19, 2013, he was seen again by Dr. Marandet. He reported that the Ultram, Soma, and Neurontin were working well. Dr. Marandet ordered these medications for an addition 30 days. Dr. Mitcheff approved this request. During September 2013, he was seen on four occasions by medical staff. He complains that Dr. Benjamin R. Loveridge was rude to him during a visit and told him he would be transferred to the infirmary if he continued to have medical problems, which Keel viewed as some type of threat. He was also seen by Nurse Shalana Seifert. She had the doctor examine Keel for a problem with his ear, and he was prescribed antibiotics and Tylenol. Keel claims that Nurse Seifert was rude to him and referred to him as a "cry baby." At some point after these visits Dr. Loveridge took Keel off the Soma and Ultram.

On September 30, 2013, he was seen again by Dr. Marandet. Keel asked if he could be placed back on Soma and Ultram, but Dr. Marandet told him those medications were not appropriate for long-term use. Dr. Marandet continued to prescribe Neurontin, but decreased the dosage. Dr. Mitcheff approved the decrease. On October 18, 2013, Keel was seen at an "emergency visit" by Dr. Kevin Krembs due to pain and numbness he was experiencing. Dr.

5

Krembs made a referral for him to be placed back on Soma and Ultram, but Dr. Mitcheff did not approve this referral. He was seen again by Dr. Krembs a few days later, and the doctor ordered that his Neurontin be increased. Dr. Mitcheff did not approve this request. During November and December 2013 he was seen by Dr. Loveridge and other medical staff. Dr. Loveridge gave him an injection of another medication in his left hand, and also ordered an increase in the Neurontin. Dr. Mitcheff would not approve the increase in Neurontin but ordered alternative treatments of ibuprofen, Aleve, and Tylenol.

Around this period Keel filed a formal grievance complaining about his medical care. (DE 1-1 at 3.) In considering his grievance, the health services director noted that Keel had a "history of polysubstance abuse" and that he had changed his account of the origin of his chronic pain on several occasions, including claiming he had fallen, was in a motor vehicle accident, and was in a bike accident. She noted that in 2012 he underwent x-rays of his spine, a CT scan, and an MRI, and all of them were normal, except to show mild arthritis in his back. She noted several doctor's reports indicating that his complaints of pain were not consistent with their physical examination.

She further noted that he had been treated at an outside hospital and underwent a CT scan of his head, which was normal. She noted that he complained of an inability to use his right arm, but

had been observed on camera in his cell (unbeknownst to him), and was seen moving his arm in all directions, shifting through papers, making his bed, and shaking out his blankets. She noted that the physical therapist who had treated Keel noted normal exams with full range of motion, and opined that he was "medication dependent." Accordingly, the director found no medical basis for changing or increasing any of Keel's medications, and denied his grievance.

In February 2014, Keel was seen by Kimberly Myers, a nurse practitioner. She examined him but declined to change his medications, explaining that she had never seen him before and could not adequately gauge whether his pain had worsened. He asked to see a neurologist or hand specialist, but she told him she was not sure that this could be done before his release date in July 2014. Keel claims Nurse Myers was supposed to give him an injection for his hand but did not do so. He saw Nurse Myers again on March 7, 2014, and she confiscated a sling he was wearing on his right arm because it had not been medically ordered. She also refused his requests for additional pain medication, and suggested to him that she thought his complaints were exaggerated.

On March 14, 2014, he was seen by Dr. Marandet. He was being housed in the segregation unit at that time. He requested Vicodin for pain, but Dr. Marandet told him narcotics were not allowed in the segregation unit. On March 28, 2014, he saw Dr. Marandet again,

7

and the doctor told him he thought he needed surgery on his hand, but he did not think Dr. Mitcheff would approve the surgery since Keel was due to be released from prison in a few months. The doctor ordered Ultram for 14 days, but Dr. Mitcheff denied this request. To date Keel has not been scheduled for surgery or other outside treatment by a hand specialist, although he claims to still have significant problems with his hand.

Keel further claims that during this period he contacted Mrs. Frye (first name unknown), the health care administrator for Corizon, and Nurse Ivers (first name unknown), the Corizon nursing administrator, on multiple occasions. He claims that they either did not respond or told him there was nothing they could do because it was up to the doctors to decide what medications he received.

Based on these events, Keel seeks damages against Dr. Mitchell, Dr. Marandet, Dr. Loveridge, Nurse Myers, Nurse Seifert, Mrs. Frye, and Nurse Ivers, along with their employer, Corizon, for violating his Eighth Amendment rights. He also seeks injunctive relief regarding his ongoing need for hand surgery and pain management.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjecting component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate

indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *see also Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) ("[T]he prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional

judgment and does not go against accepted professional standards.").

A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical practice, since "the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). When an inmate has received some form of treatment for a medical condition, to establish deliberate indifference he must show that the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Id.* Although prisoners are entitled to a minimum level of adequate care, they are not entitled to demand specific types of medical treatment, nor are they entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Maggert v. Hanks*, 131 F.3d 670, 671-72 (7th Cir. 1997) ("A prison is not required by the Eighth Amendment to give a prisoner care that is as good as he would receive if he were a free person, let alone an affluent free person.").

Giving Keel the inferences to which he is entitled at this stage, he has alleged a serious medical need, specifically, chronic and painful conditions which interfere with his daily functioning. On the second prong, the court addresses each defendant in turn.

As to Dr. Marandet and Dr. Loveridge, even giving the complaint liberal construction, the court cannot conclude that Keel has alleged a plausible deliberate indifference claim against them. Instead, Keel's allegations reflect that these doctors examined him regularly, prescribed a variety of medications to address his pain, referred him for physical therapy and diagnostic testing, and sent him for outside treatment at a hospital. Although Keel apparently believes they should have done more for him, his mere disagreement with doctors over the proper course of treatment does not establish deliberate indifference. *See Arnett*, 658 F.3d at 751; *see also Ray v. Wexford*, 706 F.3d 864, 866 (7th Cir. 2013)(prisoner with arthritis failed to establish deliberate indifference where he was under the care of doctors, underwent x-rays, and received pain medication, even though the inmate was "sure . . . physicians could do better" with additional diagnostic testing); *Norfleet v. Webster*, 439 F.3d 392, 395-96 (7th Cir. 2006)(difference of opinion over treatment of inmate's painful condition did not establish deliberate indifference). Accordingly, these doctors will be dismissed as defendants.

As to Nurse Seifert, Mrs. Frye, and Nurse Ivers, there is no indication they had authority to order different medications or otherwise interfere with the treatment decisions of Keel's doctors. Nor can they be held liable for the actions of the doctors or other medical staff, since "Section 1983 does not establish a system of

11

vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). As the Seventh Circuit has explained:

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

*Id.* at 595. At most, Keel has alleged that these defendants failed to intervene with the doctors on his behalf in response to his complaints. This does not give rise to an actionable constitutional claim. *Id.* Keel also feels the nurses were rude to him, particularly Nurse Seifert who allegedly called him a "cry baby." However, this type of verbal harassment—while unprofessional—is not actionable under the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (observing that verbal harassment or rude comments by prison staff does not violate the Constitution); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (unprofessional conduct does not violate the Constitution). Accordingly, these defendants will be dismissed.

As to Nurse Practitioner Myers, Keel complains that she had him placed him in the infirmary after he complained about being in

pain. However, the court cannot conclude that it violates the Eighth Amendment to place an inmate complaining of chronic pain in the infirmary, where he could be more closely observed and monitored. Keel is also upset that she suggested he was exaggerating about his pain, but nothing required her to credit his subjective complaints without making her own medical judgment regarding his need for treatment. *See Olson v. Morgan*, —F.3d—, 2014 WL 1687802, at *4 (7th Cir. Apr. 30, 2014) (observing that prison staff "are neither required nor expected to believe everything inmates tell them"). Indeed, Keel acknowledges in his complaint that he lied to medical staff on another occasion. The attachments also reflect that by the time Keel saw Nurse Myers, he had undergone several diagnostic tests which revealed normal results. Keel has not alleged a plausible deliberate indifference claim against this defendant under Eighth Amendment standards. Accordingly, she will be dismissed as a defendant.

As to Dr. Mitcheff, the complaint indicates that he approved various forms of treatment and medication for Keel during his time at Miami. Keel's mere disagreement with some of Dr. Mitcheff's treatment decisions does establish that the doctor turned a blind eye to his medical needs. However, giving the complaint liberal construction, Keel claims he was told by another physician in late March 2014 that he is in need of hand surgery. He further alleges that Dr. Mitcheff will not approve the surgery or send him for

13

outside treatment because he is due to be released from prison soon, and not because of any legitimate medical reason. Keel further alleges that his hand is causing him significant problems and interfering with his ability to function on a daily basis. Giving him the inferences to which he is entitled, he has alleged enough to proceed on a claim against Dr. Mitcheff regarding the treatment of his hand. *See Berry v. Peterman*, 604 F.3d 435, 442–43 (7th Cir. 2010) (inmate had viable constitutional claim where evidence suggested that jail dentist "simply concluded that [the plaintiff] could endure his pain until his transfer back to the DOC several weeks later, when [he] would be the DOC dentist's problem, not hers").

Finally, Keel sues Corizon. It appears he is trying to hold the company liable because it employees the individual medical staff involved in his care. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). A private company performing a state function can be held liable to the same extent as a state actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private

company providing medical care at correctional facility). Here, however, the plaintiff does not allege, nor can it be plausibly inferred, that Corizon had an official practice or policy that caused his injury. Instead, the crux of his complaint is that individual medical staff made poor decisions in providing him care. Accordingly, Corizon will be dismissed as a defendant.

CONCLUSION

For the reasons set forth above, the court:

(1) **GRANTS** the plaintiff leave to proceed against Dr. Michael Mitcheff in his individual capacity for monetary damages for denying him proper medical treatment for his hand;

(2) **GRANTS** the plaintiff leave to proceed against Dr. Michael Mitcheff in his official capacity for injunctive relief related to his current need for medical treatment for his hand;

(3) **DISMISSES** Dr. Noe Marandet, Kimberly Myers, Mrs. Frye, Mrs. Ivers, Shalana Seifert, Dr. Benjamin R. Loveridge, and Corizon Medical Services;

(4) **DISMISSES** any and all other claims contained in the complaint;

(5) **DIRECTS** the United States Marshals Service to effect service on Dr. Michael Mitcheff pursuant to 28 U.S.C. § 1915(d); and

15

(6) **ORDERS** Dr. Michael Mitcheff to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE, only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

DATED: May 16, 2014                    /s/RUDY LOZANO, Judge
                                       United States District Court